IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JASON BISHOP, | : | CIVIL ACTION |
|     Plaintiff, | : | |
| | : | |
| v. | : | No.: 15-CV-6069 |
| | : | |
| UPPER DARBY POLICE | : | |
| DEPARTMENT, et al. | : | |
|     Defendants. | : | |

## MEMORANDUM

**SITARSKI, M.J.**                                                                                             **May 24, 2018**

Presently before this Court is a Motion for Partial Dismissal of Plaintiff Jason Bishop's Second Amended Complaint, filed on behalf of Defendants Upper Darby Police Department, Upper Darby Township, Upper Darby Board of Supervisors, Police Superintendent Michael Chitwood, and four individually named Upper Darby police officers. (Mot. to Dismiss, ECF No. 48). Plaintiff filed a Response in Opposition to the Motion to Dismiss. (Resp., ECF No. 50). On May 22, 2018, the parties appeared for oral argument on the motion. Based on parties' positions as outlined in their written submissions and presented at oral argument before the Court, Defendants' Motion is **GRANTED in part and DENIED in part.**

### I.     FACTS ALLEGED IN SECOND AMENDED COMPLAINT

The Second Amended Complaint alleges the following facts, which are assumed to be true for purposes of the Motion to Dismiss.

On May 16, 2015, Plaintiff Jason Bishop, ("Plaintiff"), was driving on Clinton Road in Upper Darby when he noticed several parked Upper Darby police vehicles. (2nd Amend. Compl., ¶16, ECF No. 47). The parked police cars blocked Plaintiff's ability to continue driving

on Clinton Road. (*Id*.). Defendant Upper Darby Police Officers Dockery, Garay, Gieder, and Donohue were on the scene, having responded to a landlord-tenant dispute between persons who are not parties to this action. (*Id*. at ¶ 17). Plaintiff remained in his vehicle, but asked the officers if the police vehicles could be moved to allow traffic to pass. (*Id*. at ¶ 18). Officer Dockery responded to Plaintiff's request by demanding Plaintiff produce photo identification. (*Id*. at ¶ 19). When Plaintiff questioned Officer Dockery, Dockery threatened to place him under arrest. (*Id*. at ¶ 20). Plaintiff calmly reiterated his request for the police cars to be moved in order to allow traffic to exit Clinton Road. (*Id*. at ¶ 22). At that point, one of the officers grabbed Plaintiff and placed him in handcuffs, causing pain in his upper extremity, shoulder, arm and hand. (*Id*. at ¶¶ 23-24). Plaintiff claims that the other three officers on scene witnessed the altercation, and ignored his pleas for medical attention. (*Id*. at ¶¶ 25-26). He also alleges that the police officers refused to loosen his handcuffs, which he claims were too tight. (*Id*.). Plaintiff claims he was thrown into the back of a police vehicle, transported to the Upper Darby Police Department, and placed in a holding cell. (*Id*. at ¶ 27). Plaintiff was charged with disorderly conduct, and was released the same day, May 16, 2015. (*Id*. at ¶ 29). The charges filed against him on that date ultimately were dismissed. (*Id*. at ¶ 28).

## II.     PROCEDURAL HISTORY

Plaintiff commenced this action, *pro se,* by filing a Complaint against the Upper Darby Police Department and Upper Darby Police Officers Michael T. Dockery, Jr., Louis Garay, Jr., Brian Gieder, and Kevin Donohue. (Compl., ECF No. 3). Thereafter, Plaintiff filed an Amended Complaint, adding Upper Darby Police Superintendent Michael Chitwood, Upper Darby Township, and the Upper Darby Board of Supervisors. (Amend. Compl. ECF No. 17).

Subsequently, court-appointed counsel entered an appearance on behalf of Plaintiff, and filed a Second Amended Complaint.[1] (Orders, ECF Nos. 22, 24, 26; 2nd Amend. Compl., ECF No. 47).

The Second Amended Complaint contains the following ten counts:

(1) 14th Amendment due process claim against the individual defendants and the Upper Darby Police Department pursuant to 42 U.S.C. §1983, (Count I);

(2) 4th and 14th Amendment claims against the individual defendants and the Upper Darby Police Department pursuant to 42 U.S.C. §§ 1983 and 1985, (Count II);

(3) 4th Amendment False Arrest claim against the individual defendants and the Upper Darby Police Department pursuant to § 1983, (Count III);

(4) False arrest claim based on Pennsylvania law against the individual defendants and the Upper Darby Police Department, (Count IV);

(5) Malicious Prosecution claim against the individual defendants and the Upper Darby Police Department pursuant to 42 U.S.C. §1983, (Count V);

(6) Malicious Prosecution claim based on Pennsylvania law against the individual defendants and the Upper Darby Police Department, (Count VI);

(7) Assault and Battery claim against defendant Dockery based on Pennsylvania law, (Count VII);

(8) False Imprisonment claim based on Pennsylvania law against the individual defendants and the Upper Darby Police Department, (Count VIII);

(9) False Arrest and False Imprisonment pursuant to 42 U.S.C. §§ 1983, 1985(3), 1986, and 1988 against the individual defendants and the Upper Darby Police Department, (Count IX); and

---

[1] Counsel first filed a Motion for Leave to Amend the Complaint, (ECF No. 40), with a proposed Second Amended Complaint. Based on this Court's review of the proposed pleading, it was noted that "Plaintiff's proposed Amended Complaint paints with too broad a brush." (Order, ECF No. 43). For example, Plaintiff asserted 4th and 14th Amendment claims against all defendants. The Court directed counsel to the Supreme Court decision in *Albright v. Oliver*, 510 U.S. 266, 273 (1994), which held that generalized "due process" claims are improperly asserted where a particular Constitutional Amendment provides protections against the complained-of conduct. (Order, ECF No. 43). Counsel was urged to "separate the wheat from the chaff, so that the parties and the Court can litigate the claims asserted as efficiently as practicable." (*Id.*). Notwithstanding this, the 14th Amendment claims were re-pled in the Second Amended Complaint, and became the subject of motion practice, only to be ultimately withdrawn by the Plaintiff.

(10) Conspiracy to Violate Plaintiff's Civil Rights against all Defendants, (Count X). (Resp. 3-4; 2nd Amend. Compl. Counts I-X).

Defendants move to partially dismiss Plaintiff's Second Amended Complaint. Specifically, Defendants argue that the following claims should be dismissed: (1) all official capacity claims against the individual defendants; (2) all claims against the Upper Darby Police Department; all Fifth and Fourteenth Amendment claims; and (3) all claims based on 42 U.S.C. Section 1985.[2] Defendants also contend that the Upper Darby Police Department, Police Superintendent Chitwood, and the Board of Supervisors should be dismissed as parties from this action.[3] Finally, Defendants argue that the Second Amended Complaint fails to state a claim for which relief can be granted as to: (1) the governmental liability claim against Upper Darby Township, (2) the conspiracy claim alleged in Count X; (3) the federal malicious prosecution claim alleged in Count V;[4] and (4) the federal and state false arrest and false imprisonment claims and the state malicious prosecution claims against individual defendants Garay, Gieder, and Donahue, (Counts III, IV, IV, VIII, IX). Based on the written submissions of the parties and

---

[2] In his response, Plaintiff agreed to withdraw without prejudice the Fifth and Fourteenth Amendment claims, as well as all claims pursuant to Section 1985. (Resp. 8, 9). Plaintiff confirmed this position during the May 22, 2018, oral argument. Accordingly, Counts I and II are dismissed, as well any Fifth Amendment and Section 1985 claims alleged in the Second Amended Complaint.

[3] Plaintiff agreed to withdraw without prejudice his claims against Upper Darby Township and the Upper Darby Board of Supervisors. (Resp. 14). Because the Court has construed Plaintiff's official capacity claims against the individual defendants and the claims against the Upper Darby Police Department as *Monell* claims against Upper Darby Township, *see infra*, all governmental liability claims pled in the Second Amended Complaint will be construed as proceeding against Upper Darby Township, while the Upper Darby Police Department and Board of Supervisors will be dismissed from this action.

[4] Plaintiff withdrew his federal malicious prosecution claim (Count V) at the May 22, 2018, oral argument.

arguments presented at the May 22, 2018, oral argument, I will consider Plaintiff's remaining claims below.

## III. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint may not contain just "labels and conclusions," for "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. In determining the adequacy of a complaint, a court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to plaintiff." *Warren. Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 84 (3d Cir. 2011).

## IV. DISCUSSION

### A. Official Capacity Claims against the Individual Defendants

In addition to naming the Upper Darby Township as a defendant, Plaintiff has sued individual defendants Dockery, Garay, Gieder, Donohue, and Chitwood in their individual and official capacities. (2nd Amend. Compl. 8-12). Individual or personal capacity suits "seek to impose personal liability upon a government official for actions he takes under color of law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "Official capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id.*; *see also Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 n.55 (1978). If "the governmental entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the [government] entity itself."

5

*Graham*, 473 U.S. at 166. Accordingly, Plaintiff's official capacity claims against defendants Dockery, Garay, Gieder, Donohue, and Chitwood are dismissed. *See, e.g., DeBellis v. Kulp*, 166 F. Supp. 2d 255, 264-65 (E.D. Pa. 2001).

    **B.**    **Claims against the Upper Darby Police Department**

Plaintiff names the Upper Darby Police Department as a Defendant in this action. Defendants argue that all claims against the Upper Darby Police Department should be dismissed because local police departments are not "persons" who can be sued under Section 1983.

"In Section 1983 actions, police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity." *DeBellis*, 166 F. Supp. 2d at 265. Thus, a police department "lacks an identity separate from the municipality of which it is a part." *Draper v. Darby Twp. Police Dep't*, 777 F. Supp. 2d 850, 856 (E.D. Pa. 2011); *see also Lewis-Bey v. Delaware County*, No. 17-2537, 2018 WL 1518807, at *3 (E.D. Pa. March 27, 2018).

Accordingly, the Upper Darby Police Department is not a proper party to this litigation and all claims against it will be dismissed. *See C.T. by Smith v. Delaplaine McDaniel School*, No. 17-4463, 2018 WL 1072385, at *3 (E.D. Pa. Feb. 26, 2018) (citing *Monastra v. Delaware County Sheriff's Office*, 49 A.3d 556, 558 (Pa. Cmmw. 2012) (affirming dismissal of claims against Police Department and Sheriff's Office because Plaintiffs "should have filed [the] action against the political subdivisions, not the sub-units.")).

    **C.**    **Claims against Upper Darby Police Superintendent Michael Chitwood and Upper Darby Board of Supervisors**

Claims against a person in his individual capacity must sufficiently allege his personal involvement. "A defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*."

6

*Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Delarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). A civil rights Plaintiff can allege such personal involvement under either of two theories: (1) that a supervisor personally directed, or had actual knowledge and acquiescence in a constitutional violation, *id*. (quoting Evancho, 423 F.3d at 353); or (2) that a defendant, in his role as policymaker, acted with deliberate indifference in establishing a policy that directly caused the alleged constitutional violation, *Brown v. May*, No. 16-01873, 2017 WL 2178122, at *2 (E.D. Pa. May 17, 2017).

As to defendant Chitwood, Plaintiff here does not articulate either theory sufficiently to sustain a claim. He does not allege that Chitwood was present at the scene, or that he directed or acquiesced in the violation of Plaintiff's constitutional rights. "Allegations of participation or actual knowledge and acquiescence…must be made with appropriate particularity." *Rode*, 845 F.2d at 1207–08. Plaintiff similarly fails to allege that Chitwood was a policymaker. To the contrary, Plaintiff concedes that Defendant Chitwood, as a township Police Chief, is not a final "policymaker" within the meaning of the Civil Rights Act. (Resp. 8).

Because Plaintiff does not allege that Chitwood personally violated Plaintiff's constitutional rights, nor does he plead that other defendants acted with Chitwood's personal direction, knowledge, or acquiescence to violate his constitutional rights, Plaintiff's Section 1983 claims against Chitwood fail to state a claim upon which relief may be granted.[5]

The Second Amended Complaint also names as defendants the Upper Darby Board of Supervisors. (2nd Amend. Compl., ¶ 13). Plaintiff does not allege that the individual Board of

---

[5] The Second Amended Complaint also fails to include any factual allegations that would establish state law claims of false arrest, false imprisonment, or malicious prosecution against defendant Chitwood, and therefore, defendant Chitwood is dismissed from this action in its entirety.

7

Supervisors were present at his May 2013 arrest, or that they had personal knowledge of, or involvement with, his arrest and prosecution.[6]  In fact, the Second Amended Complaint contains <u>no</u> factual allegations against the Board of Supervisors.  For these reasons, Defendants' Motion to Dismiss the Board of Supervisors from this action is granted.

      **D.**      **Claims against the Township of Upper Darby**

Paragraph 34 of the Second Amended Complaint alleges that Upper Darby Township had a "policy, custom and practice of not taking reasonable steps to properly train its police officers to not violate the constitutionally protected rights of the citizens of the Commonwealth . . . to include, but not limited to, false arrest of innocent people." (2nd Amend. Compl., ¶ 34).  Plaintiff did not plead a separate count for municipal liability against the Township.  Instead, Plaintiff averred in Count III that all defendants violated his Fourth Amendment rights guaranteed by 42 U.S.C. § 1983.  We will consider the allegations set forth in paragraph 34 in the context of Count III, and interpret Counts III as including a failure to train claim against Upper Darby Township.

"Section 1983 provides remedies for deprivations of rights established in the Constitution or federal laws.  It does not, by its own terms, create substantive rights." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (footnote and citations omitted).  A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694 (1978).  Rather, when a § 1983 claim is asserted against a municipal entity, a plaintiff must demonstrate that his constitutional deprivations were caused by an official policy or custom of the municipal entity, or a failure by the municipal entity to train its employees. *Id*.; *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997).

A policy refers to "an official proclamation, policy, or edict—either itself facially

---

[6] Plaintiff conceded as much during the oral argument.

unconstitutional or the moving force behind a constitutional violation—issued by a final decisionmaker or properly delegated agent." *Berg v. County of Allegheny*, 219 F.3d 261, 275-76 (3d Cir. 2000). A custom, on the other hand, "is an act 'that has not been formally approved by an appropriate decision-maker,' but that is 'so widespread as to have the force of law.'" *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (quoting *Bryan Cty.*, 520 U.S. at 404). Failure to train claims "are generally considered a subcategory of policy or practice liability." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042 (2015). Section 1983 liability requires that the failure to train amount to "'deliberate indifference' to the rights of persons with whom those employees will come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

Here, Plaintiff alleges that Upper Darby Township had a "policy, custom and practice of not taking reasonable steps to properly train its police officers to not violate the constitutionally protected rights of the citizens of the Commonwealth . . . to include, but not limited to, false arrest of innocent people." (2nd Amend. Compl., ¶ 34). Plaintiff further alleged that this custom and practice "amounts to deliberate indifference to the rights of people whom its police come into contact, including but not limited to, the Plaintiff." (*Id*. at 35). Accepting the facts as alleged in the Second Amended Complaint at the motion to dismiss stage, the Court will allow the *Monell* claim to proceed against the Upper Darby Township.[7]

---

[7] Defendants argue that the state law claims of false arrest, malicious prosecution, and false imprisonment set forth in Counts IV, VI, and VIII should be dismissed as to Upper Darby Police Department. As discussed *supra*, the Court agrees that the Upper Darby Police Department is not a proper party to this action. To the extent the Second Amended Complaint can be read as asserting state law claims against Upper Darby Township as a governmental entity, these claims necessarily fail because the Township cannot be held liable intentional torts committed by its employees. *See Korth v. Hoover*, 190 F.Supp.3d 394, 408 (M.D. Pa. 2016)(Caldwell, J.)(holding that Township not liable for intentional torts of employees); *Martin*

### E. Claims against Upper Darby Police Officers Garay, Gieder, and Donahue

Defendants move to dismiss the remaining claims as alleged in Counts III, IV, VI, VIII, and IX against individual officers Garay, Gieder, and Donahue. Read together, Counts III and IX allege Fourth Amendment false arrest claims against the individual police officers. Plaintiff also asserts state law false arrest, (Count IV), malicious prosecution, (Count VI), and false imprisonment, (Count VIII), against officers Garay, Gieder, and Donahue.

Defendants argue that Plaintiff failed to identify with sufficient specificity which officer arrested him and initiated the criminal proceedings against him. (Mot. to Dismiss 13-14). In support of this argument, Defendant point to Plaintiff's prior pleadings to establish that officer Dockery was the defendant responsible for arresting and charging Plaintiff. However, the Second Amended Complaint replaced the earlier pleadings.[8] *See West Run Student Hous. Assoc., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 171 (3d Cir. 2013) (amended complaint replaces entirely the previously-filed pleading). Plaintiff avers in the Second Amended Complaint, and Defendants do not dispute, that all four individual Upper Darby Police Officers were present for the events leading up to, and including, the arrest of Plaintiff on May 16, 2015. Plaintiff also alleges, *inter alia*, that one of the officers "affect[ed] an improper and unlawful arrest" while the other three officers failed to intervene. (2nd Amend. Compl., ¶¶23, 25). Based on the factual allegations contained in the operative pleading – which must be taken as true at the motion to dismiss stage -- Plaintiff has stated claims against Police Officers Garay, Gieder, and

---

*v. City of Reading*, 118 F.Supp.3d 751, 780 (E.D. Pa. 2015) (holding that the City of Reading was immune from liability under the PSTCA for intentional tort of its employee).

[8] This is not to say that a party's assertion of contrary factual positions in the pleadings is without consequence. A superseded pleading may be offered as evidence rebutting a subsequent contrary assertion. *West Run*, 712 F.3d at 171. However, at the motion to dismiss stage, when the district court typically may not look outside the four corners of the amended complaint, the plaintiff cannot be bound by allegations in the superseded complaint. *Id.*

Donahue for false arrest and false imprisonment under the Fourth Amendment and Pennsylvania state law, and for malicious prosecution under state law.

F. **Conspiracy Claim against Individual Upper Darby Police Officers**

Finally, Defendants argue that Plaintiff failed to plead sufficient facts to establish a conspiracy. (Mot. to Dismiss 9-11). To state a viable claim for conspiracy under Section 1983, a plaintiff must allege: (1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy. *Marchese v. Umstead*, 110 F.Supp. 2d 361, 371 (E.D. Pa. 2000) (citing *Panayotides v. Rabenold*, 35 F.Supp. 2d 411, 419 (E.D. Pa. 1999), aff'd, 210 F.3d 358 (3d Cir. 2000)). Civil rights conspiracies brought under Section 1983 require a "meeting of the minds," and to survive screening or a motion to dismiss, plaintiffs must provide some factual basis to support the existence of the elements of a conspiracy, namely, agreement and concerted action. *See Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)).

Here, Plaintiff has not alleged sufficient facts regarding the officers' participation in any conspiracy to violate his constitutional rights. Instead, Count X of the Second Amended Complaint states in a conclusory manner that the defendants "expressly or tacitly agreed to act and did expressly or tacitly act … in concert and conspiracy with each other . . . to undertake [violations of Plaintiff's Fourth Amendment rights]." (2nd Amend. Compl. ¶¶83-84). The Second Amended Complaint contains no specific factual detail that would establish any type of agreement, understanding by, or among, the defendant officers to plot, plan, or conspire to violate his constitutional rights. For these reasons, the Second Amended Complaint also fails to assert a claim for conspiracy under state law. *See Babul v. Therapeutics*, No. 15-2937, 2018 WL

994217, at *8 (E.D. Pa. Feb. 21, 2018); *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466, 472 (1979) (under Pennsylvania common law, a civil conspiracy requires that two or more conspirators reached an agreement to commit an unlawful act or perform a lawful act by unlawful means). Accordingly, Plaintiff has failed to plead a conspiracy in the Second Amended Complaint, and Count X will be dismissed.

V. **CONCLUSION**

For the reasons set forth in this Memorandum, Defendants' Partial Motion to Dismiss Plaintiff's Second Amended Complaint is granted in part, and denied in part. An appropriate Order will follow.

BY THE COURT:

/s/ Lynne A. Sitarski
LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE